## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

SHERILYN GERHARDT,

     *Plaintiff*,

v.

AIR TRANSPORT LOCAL 556,
TRANSPORT WORKERS UNION OF
AMERICA,

     *Defendant*.

Civil Action No. 4:09-cv-03314

**Jury Trial Demanded**

## TABLE OF CONTENTS

NATURE OF THE CASE.....................................................................................................4

PARTIES..........................................................................................................................4

JURISDICTION AND VENUE............................................................................................5

STATUTE OF LIMITATIONS..............................................................................................6

EXHAUSTION...................................................................................................................6

FACTS............................................................................................................................10

CAUSE OF ACTION........................................................................................................18

PRAYER FOR RELIEF......................................................................................................19

JURY DEMAND..............................................................................................................20

## INDEX OF EXHIBITS

**EXHIBIT A**          **Arbitration Opinion**

**EXHIBIT B**          **Transport Workers Union of America Constitution**

**EXHIBIT C**          **Medical Document from Dr. Schader**

**EXHIBIT D**          **Faxed Information**

**EXHIBIT E**          **Incident Facts**

**EXHIBIT F**          **Dr. Schader Letter**

**EXHIBIT G**          **Second set of Faxed Information**

**EXHIBIT H**          **Arbitration Denial Letter**

## COMPLAINT

COMES NOW Sherilyn Gerhardt (hereinafter "Ms. Gerhardt") and complains of Air Transport Local 556, Transport Workers Union of America, (hereinafter "TWU 556") as follows:

## NATURE OF THE CASE

1.      Ms. Gerhardt brings this breach of duty of fair representation claim against her union, TWU 556, pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.*  TWU 556 and its representatives have failed to perform their duties logically and in good faith.  Following Ms. Gerhardt's termination from Southwest Airlines, Inc. (hereinafter "SWA"), TWU 556's domicile representatives consistently ignored crucial medical conditions and research, resulting in TWU 556's reckless disregard of Ms. Gerhardt's interests.  TWU 556 denied Ms. Gerhardt adequate assistance and support throughout her grievance process.  TWU 556's failure to submit Ms. Gerhardt's medical records to SWA was the direct cause of Ms. Gerhardt's damages. These actions against Ms. Gerhardt have denied her fair representation to which she is entitled.

## PARTIES

2.      Sherilyn Gerhardt is a citizen and resident of Spring, Texas.  She has been a flight attendant employed by SWA for over twenty (20) years and a member in good standing with her union, TWU 556.  During all of the events at issue in this Complaint, Ms. Gerhardt was based in Houston, Texas.

3.      Air Transport Local 556, Transport Workers Union of America, is a union and the certified collective bargaining representative for all SWA flight attendants.  TWU 556 maintains eight local labor offices, called domiciles, which are affiliated with the State and City.  AFL-CIO

4

Councils of each domicile and are also collocated with Southwest flight attendant bases. The Executive Board consists of a President, 1st Vice President, 2nd Vice President, Recording Secretary, Financial Secretary-Treasurer, Domicile Executive Members and Executive Board Members-At-Large. Each domicile elects one Domicile Executive Board Member and one Shop Steward, who represent members at each domicile. These domiciles include the Houston Domicile located at Houston Hobby Airport, 7800 Airport Blvd., Houston, Texas 77061. TWU 556 may be served through the Texas Secretary of State at P. O. Box 12079 Austin, Texas 78711-2079.

## JURISDICTION AND VENUE

4.      Subject-matter jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*

5.      Personal jurisdiction over TWU 556 exists because TWU 556 conducts extensive operations at Houston Hobby Airport in Houston, Texas, including maintaining a domicile and representing union members there, through a Domicile Executive Board Member and Shop Steward.

6.      Venue is proper in this district under 28 U.S.C. § 1391 and 29 U.S.C. § 185(c) ("district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members") because TWU 556 represents its members in Houston, Texas through the Houston Domicile and because all or a substantial part of the acts giving rise to this action took place in Houston, Texas.

## STATUTE OF LIMITATIONS

7.    A six-month limitations period applies to Ms. Gerhardt's duty of fair representation claim.  These claims accrued only when Ms. Gerhardt discovered that TWU 556 and its representatives never submitted any medical documents to SWA.  *See Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 124 (5th Cir. 1990).  This happened no earlier than June 17, 2009, when the Arbitration Opinion concerning Ms. Gerhardt's grievance was released. (See Exhibit A, p. 1 "Arbitration Opinion") The Arbitration Opinion apprised Ms. Gerhardt that she would not receive back pay or compensation for lost benefits, because TWU 556 never provided SWA with her medical documents. *See Beck v. Caterpillar, Inc.*, 855 F. Supp. 260, 263 (C.D. Ill. 1994), *aff'd*, 50 F.3d 405 (7th Cir. 1995) (statute of limitations on a hybrid § 301 claim begins to run from the time of the *final* decision on the grievance).  The statute of limitations was tolled during Ms. Gerhardt's arbitration.  *See Frandsen v. Brotherhood of Railway, Airline, and Steamship Clerks, Freight Handlers, Express, and Station Employees*, 782 F.2d 674, 681 (7th Cir. 1986) (during pendency of union procedures, the six-month statute of limitations is tolled and begins running only when union procedures are exhausted).  Because this action was filed within six months from June 17, 2009, it is timely.

## EXHAUSTION

8.    Ms. Gerhardt need not exhaust intra-union remedies because TWU 556's Constitution and Bylaws are ambiguous, do not provide adequate remedies, and do not address the type of claim brought by Ms. Gerhardt. Exhaustion of internal union procedures is unwarranted where a member's Union Constitution and Bylaws are ambiguous or void of remedies to make the union member whole.  *See Guidry v. Int'l Union of Operating Eng'rs,* 882

F.2d 929, 941 (5th Cir. 1989) (the Union Constitution and Bylaws were ambiguous and provided that the local union's determination of any grievance shall be final and binding, but did not provide specific grievance procedures for the type of complaint plaintiff asserted); *Higgins v. Modern Laundry and Dry Cleaning Co.*, 486 F.Supp. 239, 240-41 (E.D. Pa. 1980) (where the union charter was ambiguous on its face and the union member proceeds against the union itself, rather than its individual officers, and seeks back pay and consequential damages, exhaustion is not required); *Lucas v. Philco-Ford Corp.*, 380 F.Supp. 139, 145 (E.D. Pa. 1974) (union remedies were inadequate, where the Union Constitution allowed for disciplinary action to be taken against union members and a fine would be levied against them in an amount payable to plaintiff).

Alternatively, a union member is not required to exhaust intra-union procedures that are uncertain or futile, such as when a member's Union Constitution and Bylaws do not mandate exhaustion before proceeding to civil action. *See Monroe v. Int'l Union, UAW*, 723 F.2d 22, 26 (6th Cir. 1983). The futility exception applies and "[e]mployees are excused from exhausting internal grievance procedures where doing so would result in the union conducting an investigation of itself and having to prove its own misconduct." *Barousse v. Paper Allied-Indus., Chem. & Energy Workers Int'l Union*, 265 F.3d 1059, 2001 WL 872844, *5 (5th Cir. 2001) (not designated for publication).

9.     Article XIX of TWU 556's Constitution governs the Discipline of TWU 556 members and provides:

> Section 1. A charge by a member or members in good standing that a member or members have violated this Constitution or engaged in conduct unbecoming a member of the Union must be specifically set forth in writing and signed by the member or members making the charge. The charge must state the exact nature of the alleged offense or offenses and,

if possible, the period of time during which the offense or offenses allegedly took place.

Section 5. The following enumerated acts are set forth as typifying conduct unbecoming a member of the Union. This enumeration shall not be construed to exclude from disciplinary action other forms of unbecoming conduct.

a.  Violation of this Constitution, any collective bargaining agreement, or working rule of the Local Union;

b.  Obtaining membership through fraudulent means or by misrepresentation;

c.  Maliciously instituting, or urging or advocating that a member of any Local Union institute action in a court against the International Union or any of its officers or against the International Union or any of its officers or against any Local Union, or any of its officers without first exhausting all remedies through the forms of appeal of the International Union;

d.  Advocating or attempting to bring about the withdrawal or disaffiliation from the International Union of any Local Union or any member or group of members;

e.  Maliciously publishing or circulating among the membership false reports or misrepresentations;

f.  Working in the interest of or accepting membership in any organization dual to the International Union;

g.  Willfully wronging a member of the International Union;

h.  Using abusive language or disturbing the peace or harmony of any meeting in or around any office or meeting place of the International Union or Local Union;

i.  Fraudulently receiving any money due the organization or misappropriating the monies of the organization;

j.  Charging interest directly or indirectly in excess of the legal rate of interest to fellow employees;

k.  Using the name of the Local Union or of the International Union, or its emblem, for any unauthorized purpose;

8

l.  Furnishing a complete or partial list of the membership of the International Union or of any Local Union to any person or persons other than those whose official position entitles them to have such a list;

m.  Deliberately interfering with any official of the International Union in the discharge of his/her duties;

n.  Being a member, consistent supporter of or active participant in the activities of the Communist Party, or of any Fascist, Totalitarian or other subversive organization which opposes the democratic principles to which our Nation and our union are dedicated;

o.  By act, omission or conduct prejudicing or damaging the interests and welfare of the International Union or of his/her Local Union.

(See Exhibit B, "Constitution") These Sections, which provide violations and procedures for charging other members is void of the type of claim brought by Ms. Gerhardt. Ms. Gerhardt's claim is for breach of the duty of fair representation against TWU 556. Additionally, Ms. Gerhardt is not filing an action against a single union member or officer, nor is she seeking disciplinary penalties against such a member.

10.    Article XX, Section 6 and 7 of TWU 556's Constitution, regulate the remedies afforded to union members and provides:

Section 6. The Local Executive Board shall take such action on the report of the Trial Committee as it may deem proper, and in the event the accused is found guilty of the charges preferred against him/her, shall impose such uniformly applied penalties as in its judgment it may deem fitting and proper and including ineligibility to hold any office or appointive position in the Local or International Union for a period not exceeding three years.

Section 7. If an officer of the Local union is found guilty of charges preferred against him/her, the Local Executive Board may remove him/her from office in addition to any other uniformly applied penalty it may impose including ineligibility

to hold any office or appointive position in the Local or
International Union for a period not to exceed three years.

Nowhere in the above sections does the TWU 556's Constitution speak of remedies to aggrieved

union members.    At best Sections 6 and 7 allow the Local Executive Board to sanction or

penalize the guilty member.    These provisions are ambiguous on their face.    Further, these

sections do not provide for monetary compensation or back pay to union members who charge

other members with Constitutional or Bylaw violations.

11.    Any internal disciplinary procedure followed by Ms. Gerhardt would require

TWU 556 to investigate itself.  Hence, the futility exception would apply because Ms. Gerhardt

would have to submit her claim "to a group that is in large part chosen by [her union] against

whom [her] real complaint is made." *Barousse*, 265 F.3d 1059, 2001 WL 872844, *5.

12.    Finally, TWU 556's Constitution and Bylaws do not mandate or require members

to follow Article XIX before they proceed.  The Constitution is absent of such language.  Thus,

Ms. Gerhardt cannot exhaust intra-union procedures because the Constitution and Bylaws do not

provide procedures for union members with her type of claim.

### FACTS

### I.    Ms. Gerhardt's Employment and Termination

13.    Sherilyn Gerhardt decided to be a flight attendant over twenty (20) years ago,

when she signed on with Continental Airlines.    After eight months with Continental Airlines,

Ms. Gerhardt made a decision to work for SWA.    Since that decision she has been with SWA for

twenty (20) years.    At no time during her career with SWA, was Ms. Gerhardt reprimanded or

disciplined for any reason.    At all relevant times, she has been a member in good standing with

TWU 556, a requisite for employment with SWA.  On September 8, 2008, Ms. Gerhardt was

notified by mail that she was terminated from SWA because of an adverse Evidential Breath Test (hereinafter "EBT") result.

14.     On or about September 1, 2008, Ms. Gerhardt drove from her home in Spring, Texas to Houston Hobby Airport, approximately forty-five (45) minutes away.  Upon her arrival, she entered the SWA Flight Attendant lounge.  Ms. Gerhardt was then required to submit to an EBT, which was later proven to be inaccurate.  The EBT results showed a blood alcohol content of 0.162 and 0.153.  Although the tests showed a blood alcohol content in excess of SWA policies, Ms. Gerhardt had not been drinking the morning of September 1, 2008.  After the tests Ms. Gerhardt was sent home.

15.     After Ms. Gerhardt was sent home, she immediately called and notified TWU 556 of her current situation. The next day on or about September 2, 2008, Ms. Gerhardt visited her doctor to obtain medical documentation, which linked her medical conditions to false EBT readings. Her doctor suspected possible causes for the false reading such as, Acid Reflux Disease, hypoglycemia, or high liver enzymes caused by damage to her liver. (See Exhibit C Medical document from Dr. Schader) On or about September 3, 2008, TWU 556 received research information from Ms. Gerhardt regarding medical explanations for her false EBT readings. (See Exhibit D "faxed information")

III.    **Arbitrarily Refusing to Provide Assistance**

16.     On or about September 4, 2008, a fact finding meeting was held between Kevin Clark (hereinafter "Mr. Clark") the SWA Houston Inflight Base Manager, Stephanie Tillman a TWU 556 Union Representative, Katrina Bannon an Inflight Services Supervisor, and Ms. Gerhardt.  At this meeting Ms. Gerhardt provided Mr. Clark and Stephanie Tillman with a written statement (See Exhibit E "Incident Facts").   The written statement outlined Ms.

11

Gerhardt's medical conditions, future doctor appointments, and possible causes for false EBT results. This fact-finding meeting was the second time in two consecutive days Ms. Gerhardt informed TWU 556 of her medical conditions.

17.   Ms. Gerhardt inquired about submitting medical documents from her doctor to Mr. Clark.  Mr. Clark advised her he was unable to review the medical documents, but that Ms. Gerhardt could submit them if she wished. At this meeting Mr. Clark did not provide Ms. Gerhardt with procedural information for the submission of her medical documents.

18.   Although she sat in on the meeting, Stephanie Tillman never gave Ms. Gerhardt any advice or assistance regarding the submission of her medical documents to SWA. Inexplicably, not a single TWU 556 representative ever offered to submit Ms. Gerhardt's medical documents to SWA or assist her in submitting them for SWA's review.

19.   Ms. Gerhardt's physician, Shannon R. Schader, M.D., was available to TWU 556 for medical inquiry at all relevant times during the grievance process. Further, TWU 556 representatives told Ms. Gerhardt not to contact SWA, because that was TWU 556's responsibility.  On or about September 9, 2008, Ms. Gerhardt received a letter from Mr. Clark, notifying her that she had been terminated due her EBT results.

## IV.   Irrationally Refusing to Submit Medical Records and Documents

20.   After termination on or about September 10, 2008, Ms. Gerhardt commenced contact with Mr. Christopher St. Julian (hereinafter "Mr. St. Julian"), her second and final union representative.   Mr. St. Julian provided an official grievance form, which Ms. Gerhardt signed and sent back.  During her initial conversation with Mr. St. Julian Ms. Gerhardt informed she would never be able to regain her job with SWA.  Mr. St. Julian repeatedly made statements to

the effect that Ms. Gerhardt should only pursue the grievance process in order to keep her limited health insurance.

21.    Over the next month Ms. Gerhardt attempted to contact Mr. St. Julian with little success, and not one TWU 556 representative contacted Ms. Gerhardt during this time.

22.    On or about October 8, 2008, Mr. St. Julian phoned Ms. Gerhardt and proceeded with Step One of the grievance process.   At this time, a teleconference was held and SWA denied Ms. Gerhardt's grievance.   Ms. Gerhardt then appealed her denial to the Flight Attendant Board of Adjustment to prolong the grievance process.   Again, Mr. St. Julian told her of the futility of her grievance.

23.    Finally, on or about December 9, 2008, after repeated urges and phone calls from Ms. Gerhardt, Mr. St. Julian returned her phone call and inquired about possible medical conditions, which might have caused a false positive EBT result.   Although the TWU 556 was previously supplied with research and information from Ms. Gerhardt, Mr. St. Julian requested a letter from her physician explaining her current medical conditions. (See Exhibit F "Dr. Schader letter") Mr. St. Julian told Ms. Gerhardt that this letter would be submitted to the Grievance Committee for review.   While these documents may or may not have been submitted to the Grievance Committee, Mr. St. Julian and other TWU 556 representatives inexplicably failed to provide SWA with medical documents, which would have put SWA on notice of Ms. Gerhardt's false positive EBT readings.

24.    The following day on or about December 10, 2008, Dr. Shannon R. Schader sent the requested letter to TWU 556.   Neither Mr. St. Julian nor any TWU 556 representative sent Dr. Shannon R. Schader's letter to SWA for review.   Along with the letter from Dr. Schader, Ms. Gerhardt for the third time sent her written statement of the Incident Facts and more research to

Mr. St. Julian and TWU 556.  Two days later Ms. Gerhardt faxed even more research to Mr. St. Julian with which he could use in a good faith attempt to represent her grievance. (Exhibit G "more faxed info") Unfortunately for Ms. Gerhardt, Mr. St. Julian again failed to forward the research and medical documents to SWA.  Most importantly, TWU 556 failed to use their many opportunities and documents to protect Ms. Gerhardt's interests with SWA.

## V.    Inexplicably Not Preparing Ms. Gerhardt

25.    On or about December 15, 2008, Ms. Gerhardt received a telephone call from Mr. St. Julian. During this conversation, Mr. St. Julian informed Ms. Gerhardt of a teleconference the next day, yet he failed to disclose the procedures, parties, questions, and follow up information regarding the teleconference with the Union Grievance Committee. Other than providing Ms. Gerhardt with the date, time, and broad purpose of the teleconference, Mr. St. Julian gave her little notice or guidance on what to expect during this crucial conference call.

26.    As a result of Mr. St. Julian's gross inadequate assistance and lack of support, Ms. Gerhardt was unprepared, surprised, and confused during the conference.  The teleconference participants for TWU 556 included, Mr. St. Julian, TWU 556 President, and other unidentified Grievance Committee members.  After a short brief statement, Ms. Gerhardt's participation in the meeting was abruptly terminated.  Ms. Gerhardt could barely be called a participant in her own grievance process.

## VI.    Captain Don Renfro

27.    On or about December 15, 2008, Ms. Gerhardt was put in contact with Captain Don Renfro (hereinafter "Captain Renfro"), by pilot and Southwest Airlines Pilot's Association representative, Larry Lonero. Captain Renfro has a background in toxicology and was a former instructor and breath technician.  After consulting with Ms. Gerhardt, Captain Renfro agreed to

help and contacted TWU 556 representative Mr. St. Julian.  Captain Renfro was conferenced in on the telephone call between Mr. St. Julian and Ms. Gerhardt concerning the teleconference with the Grievance Committee the following day.  Captain Renfro, much like Ms. Gerhardt, received little to no information from which he could prepare for the conference call with the Grievance Committee.

28.     On or about December 16, 2008, Captain Renfro marginally participated in the teleconference with the TWU 556 Grievance Committee.  Neither Captain Renfro nor Ms. Gerhardt knew when or if the other was interviewed.  Without any guidance or support the Grievance Committee opened the floor to Captain Renfro.  Surprised and confused by TWU 556's procedure, Captain Renfro gave a brief expert opinion concerning the relationship between Acid Reflux, rapid weight loss, and inaccurate EBT readings.  Captain Renfro also made a brief statement explaining that SWA's Policies on Alcohol Misuse were not identical to The Department of Transportation's policies.   Much like Ms. Gerhardt, Captain Renfro was upset and angered by TWU 556's poor preparation and handling of the conference call.

## VII.    Arbitration

29.     On or about December 17, 2008, following the conference call with Mr. St. Julian, TWU 556 President, and Grievance Committee members, Ms. Gerhardt attempted to contact Mr. St. Julian in order to obtain the outcome of the conference call.  After leaving messages with Mr. St. Julian and not receiving a call back, Ms. Gerhardt continued to phone Mr. St. Julian until she received a call back informing her once again that her grievance was futile.

30.     Although Ms. Gerhardt provided TWU 556 and its representatives with medical documents, research, and expert testimony regarding false positive EBT results, TWU 556 arbitrarily refused to assist, represent, or submit any of this information to SWA.  In fact TWU

556 made it clear they would not help her regain her position with SWA, describing the issue as "black and white." On or about January 9, 2009, Ms. Gerhardt received a letter from TWU 556 notifying her of its decision not to proceed with her grievance. (See Exhibit H "arbitration denial letter")

31.     Undeterred, Ms. Gerhardt retained counsel, waived her right to appeal to the Flight Attendant Board of Adjustments, and instead elected to move straight to arbitration.

32.     Ms. Gerhardt's arbitration was held on April 16, 2009. Evidence of her medical conditions was presented to SWA for the first time. Captain Renfro's expert testimony at the arbitration was also presented to SWA for the first time. TWU 556 and its representatives never presented any of this crucial information to SWA.

33.     On or about June 17, 2009, the Arbitration Opinion was released and recommended Ms. Gerhardt's reinstatement, but not her request for back pay. The arbitrator's opinion stated:

> Pursuant to Southwest policy, Clark held a fact-finding meeting on September 4, 2008, at which he informed Grievant that if she wanted her medical records considered with respect to her discipline she should submit those to the Medical Review Officer. Grievant did not submit these documents to the company's Medical Review Officer . . . In short, Grievant did not bring alternative explanations for her positive EBT results to Southwest's attention until this arbitration. Therefore, Southwest was never given any real reason to question the results of the EBT until this arbitration. For these reasons, while this arbitrator is of the opinion that reinstatement is appropriate, back pay is not.

(Exhibit A, p. 12) This excerpt from the Arbitrator's Opinion makes it clear that but for TWU 556's arbitrary and illogical conduct of failing to submit Ms. Gerhardt's medical conditions and research, Ms. Gerhardt would have received back pay. By not presenting such important information to SWA, TWU 556 extinguished Ms. Gerhardt's right to further compensation.

34.    Although her employment was reinstated, Ms. Gerhardt complains of the following arbitrary, capricious, inexplicable, irrational, and wrongful acts by TWU 556, which resulted in the arbitrator's opinion denying back pay:

a.  failing to provide any guidance, assistance, or information to Ms. Gerhardt so she could have submitted her medical records and research information to SWA;

b.  failing to submit Ms. Gerhardt's medical records to the proper SWA personnel;

c.  failing to provide Ms. Gerhardt with substantive and procedural information regarding her grievance;

d.  failing to conduct a proper investigation into Ms. Gerhardt's medical conditions and their relation to false EBT results;

e.  refusing to arbitrate Ms. Gerhardt's grievance;

f.  refusing to allow Ms. Gerhardt to actively participate in the grievance process;

g.  refusing to present Captain Renfro's expert opinion to the proper SWA personnel;

h.  violating its own Constitution and Bylaws;

i.  taking a biased stance towards Ms. Gerhardt's medical conditions; and

j.  failing to properly prepare and assist Ms. Gerhardt and her expert witness before an intra-union grievance conference.

## CAUSE OF ACTION
## BREACH OF THE DUTY OF FAIR REPRESENTATION

35.     Ms. Gerhardt realleges and incorporates by reference all allegations and facts contained in this complaint as though fully set forth here.

36.     Under the Railway Labor Act, TWU 556, as the exclusive bargaining agent of Southwest Airlines Flight Attendants, including Ms. Gerhardt, owes Ms. Gerhardt a duty of fair representation.  *See Vaca v. Sipes* 386 U.S. 171, 87 S. Ct. 903 (1967).  This duty inherently includes a duty to perform a reasonable investigation.  *See id.*; *Turner v. Air Transport Dispatchers' Assoc.,* 468 F.2d 297, 299-300 (5th Cir. 1972) ("It is beyond doubt that the duty of fair representation includes an obligation to investigate and to ascertain the merit of employee grievances").

37.     A union violates its duty of fair representation if its actions are arbitrary, discriminatory, or in bad faith.  *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 67, 11 S.Ct. 1127 (1991).  A union's actions are arbitrary if the union exhibits egregious disregard for the union member or if the action was irrational or inexplicable. *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 46, 119 S.Ct 292 (1998).  The union must especially avoid arbitrary or perfunctory behavior when the grievance involves an employment discharge — "the industrial equivalent of capital punishment."  *Griffin v. Int'l Union,* 469 F.2d 181, 183 (4th Cir. 1972); *see also Miller v. Gateway Transp. Co., Inc.,* 616 F.2d 272, 277 n. 12 (7th Cir. 1980).

38.     A union breaches its duty of fair representation "when it arbitrarily ignores a meritorious grievance or handles it in a perfunctory manner." *Int'l Broth. of Elec. Workers v. Foust*, 442 U.S. 42, 46, 99 S.Ct. 2121 (1979).   Failure to perform a ministerial task, where individual interest is strong and will result in extinguishing an employee's claim, may constitute arbitrary conduct establishing a breach of the duty of fair representation. *Beck v. United Food*

18

*and Commercial Workers Union, Local 99*, 506 F.3d 874, 881 (9th Cir. 2007).  Union error is "arbitrary if it reflects a reckless disregard for the rights of the individual employee." *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985).

39.     Accordingly, in the present case, TWU 556 owed Ms. Gerhardt a duty of fair representation in connection with Ms Gerhardt's grievance against SWA.  As a result of TWU 556's arbitrary and grossly negligent representation, Ms. Gerhardt was denied back pay, benefits, and required personal representation in her arbitration with SWA.

### PRAYER FOR RELIEF

40.     Ms. Gerhardt realleges and incorporates by reference all allegations and facts contained in this complaint as though fully set forth here.

41.     Ms. Gerhardt respectfully prays for judgment including:

    a.    Full back pay for the period of time that Ms. Gerhardt was terminated until the date she was reinstated;

    b.    Monetary compensation for ten months of insurance;

    c.    Monetary compensation for all 401K contributions for the period of time Ms. Gerhardt was terminated until the date she was reinstated;

    d.    Monetary compensation for flight and hotel arrangements;

    e.    Monetary compensation for an Alcohol Awareness Program;

    f.    Punitive and exemplary damages in an amount to be determined by the jury;

    g.    Reasonable attorneys' fees and costs; and

    h.    Any other relief in law or equity to which Ms. Gerhardt may be justly entitled.

## JURY DEMAND

42.    Ms. Gerhardt demands trial by jury on all issues.


October 12, 2009


Respectfully submitted,



/s/ K.A.D. Camara
K.A.D. Camara
*Attorney-in-charge*
Texas Bar No. 24062646
Southern District Bar No. 870498
camara@camarasibley.com
CAMARA & SIBLEY LLP
2339 University Blvd.
Houston, Texas  77005
Telephone: 713-893-7973
Fax: 713-583-1131

ATTORNEY FOR PLAINTIFF SHERILYN GERHARDT