IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERILYN GERHARDT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-09-3314 |
| | § | |
| AIR TRANSPORT LOCAL 557 and | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER GRANTING SUMMARY JUDGMENT**

Pending before the Court in the above referenced cause, alleging breach of duty of fair representation pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et seq.*, are (1) Defendant Transport Workers Union of America, AFL-CIO's ("TWU's") motion for summary judgment (instrument #20) and (2) Defendant Air Transport Local 556, Transportation Union of America's ("Local 556's") motion for summary judgment (#21).

**I.   Relevant Law**

**A.   Standard of Review**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'"  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law."  *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).  Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of

an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).  Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).  Nor are pleadings competent summary judgment evidence.  *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

A district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion.  *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), *citing EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999).

While a failure to state a claim is usually challenged by a motion for dismissal under Rule 12(b)(6), it may also constitute the basis for a summary judgment under Rule 56 because "the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992).  In such circumstances, the motion for summary judgment challenging the sufficiency of the complaint

will be "evaluated much the same as a 12(b)(6) motion to dismiss."

*Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).[1]

---

[1] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). *See also Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex. Jan. 31, 2008). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, ____ F.3d ____, No. Civ. A. L-08-39, 2010 WL 3081504, * 3 (5th Cir. Aug. 9, 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 2010 WL 3081504 at * 3, *quoting Twombly*, 550 U.S. at 555, 570. Furthermore, the plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ."

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United*

A motion for summary judgment should be granted if, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff, the plaintiff's complaint nonetheless fails to state a claim. *Id.*

**B.  Duty of Fair Representation and the RLA**

Relations between employees and their labor unions in the airline industry are governed by the RLA, 45 U.S.C. § 181.  The statute mandates that since the labor union is the employees' exclusive bargaining representative, it has a duty to fairly represent all covered employees in its collective bargaining with an employer and in the enforcement of the resulting collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 177 (1944); *Local 565 Air Transport Division Transport Workers Union of America AFL-CIO*, Civ. A. No. 3:09-CV-1181-B, 2010 WL 4314074, *3 (N.D. Tex. Oct. 25, 2010).[2]  A union breaches that duty of fair representation when its action toward a member of the collective

_____

*States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

[2] The United States Supreme Court recognized an implied duty of fair representation under the Railway Labor Act in *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 202-07 (1944).

bargaining unit is "arbitrary,[3] discriminatory,[4] or in bad faith.[5]" *Id.; id.* "A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991), *citing Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). The union has considerable discretion in processing grievances as long as its conduct in not arbitrary, discriminatory, or in bad faith. *Bazarte v. United Transportation*

---

[3] Conduct is arbitrary "only when it is irrational; when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998). This deferential standard "gives the union room to make discretionary decision and choices, even if those judgments are ultimately wrong." *Id.* at 45-46.

[4] To demonstrate discrimination, a plaintiff must show animus on the part of the union and that plaintiff was treated differently than others similarly situated. *Spellacy v. Airline Pilots Ass'n*, 156 F.3d 120, 130 (2d Cir. 1998); *Thompson v. Aluminum Co. of America*, 276 F.3d 651, 658 (4th Cir. 2002)("While the analysis of whether a union's actions were arbitrary looks to the objective adequacy of that union's conduct, the analysis of discrimination and bad faith must focus on the subjective motivation of the union officials."), *cert. denied*, 537 U.S. 818 (2002). "To establish that the union's exercise of judgment was discriminatory, a plaintiff must 'adduce evidence of discrimination that is intentional, severe, and unrelated to legitimate objectives.'" *Beck v. Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007), *quoting Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 274, 301 (1971), and *citing Vaca*, 386 U.S. at 177.

[5] To show that the union exercised its judgment in bad faith, a plaintiff must show substantial evidence of fraud, deceit, or dishonesty, e.g., if the union representative acts in his own interest instead of that of the union member. *Beck*, 506 F.3d at 880.

*Union*, 429 F.2d 868, 872 (3d Cir. 1970); *Landry v. The Cooper/T. Smith Stevedoring Co., Inc.*, 880 F.2d 846, 852 (5th Cir. 1989); *Williams v. Simmons Co.*, 185 F. Supp. 2d 665 (N.D. Tex. 2001).  An individual employee does not have an absolute right to have his grievance taken to arbitration.  *Vaca*, 386 U.S. at 191.  *See also Thompson*, 276 F.3d at 658("An employee has no absolute right to insist that his grievance be taken to a certain level; a 'union may screen grievances and press only those it concludes will justify the expense and time involved in terms of benefitting the membership at large.'"), *citing Griffin v. Int'l United Auto., Aerospace and Agr. Implement Workers of America, UAW*, 469 F.2d 181, 183 (4th Cir. 1972).  Nor can the union "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Id.* at 191.  A union does not breach its duty of fair representation through simple negligence or mistake in judgment.  *Id.* at 192-93.  The union must investigate the merits of the employee's grievance in good faith.  *Williams*, 185 F. Supp. 2d at 676, *citing Abilene Sheet Metal, Inc. v. NLRB*, 619 F.2d 332, 347 (5th Cir. 1980).  The employee bears the burden of proving a breach of a duty of fair representation.  *Vaca*, 386 U.S. at 193.

For claims of breach of the duty of fair representation against a union, a cause of action borrowed from the identical duty under the National Labor Relations Act, the statute of limitations is six months.  *Local 565,* 2010 WL 4314074 at *3, *citing Richardson*

*v. United Steelworkers of America*, 864 F.2d 1162, 1167 (5th Cir. 1989), and *Brock v. Republic Airlines, Inc.*, 776 F.2d 523, 525-26 (5th Cir. 1985).   *See also DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163-65 (1993); *Smith v. International Org. of Masters, Mates & Pilots*, 296 F. 3d 380, 382-83 (5th Cir.)(six month limitations period applies to fair representation claims brought only against the union), *cert. denied*, 537 U.S. 1088 (2002).   A cause of action under a duty of fair representation claim accrues when the union member knew or reasonably should have known that the breach occurred.  *Local 565,* 2010 WL 4314074 at *3, *citing Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989).   In *Lee v. Cytec Industries, Inc.*, 460 F.3d 673, 676 (5th Cir.), the panel opined,

> Equitable tolling is an exception to the general rule that an employee has six months to sue from the discovery of the breach of the duty of fair representation.  The rationale for it is that because some plaintiffs must exhaust internal contractual remedies (e.g., the grievance process) before suing, it would be unfair to say that the plaintiffs' claim was barred by limitations if, while the grievance is pending, the six-month federal statute of limitations expires.

The Fifth Circuit nevertheless held that a claimant "had to sue within six months of the time it became obvious that the union had rejected his claim."  *Id.* at 677.  *See also Linzay v. Nat'l Postal Mail Handlers Union*, Civ. A. No. 06-0061-A, 2007 WL 4321930, *2 (W.D. La. Dec. 5, 2007).

## Factual and Procedural History

Plaintiff Sherilyn Gebhardt was and is a flight attendant for Southwest Airlines Company ("SWA"), which has a collective bargaining agreement[6] with Local 556, an affiliated Local Union of TWU.  Plaintiff is a member of the bargaining unit represented by Local 556.  Article 9 of the 2008 collective bargaining agreement sets out the parties' negotiated grievance procedure and states that flight attendants may be discharged only "for cause."

Because the Department of Transportation classifies flight attendants as performing safety-sensitive duties, they are subject to SWA's Alcohol Misuse Policy.  Under that policy, if a supervisor trained in detecting symptoms of misuse of alcohol has a reasonable suspicion that an individual flight attendant is impaired, the flight attendant must take an Evidential Breath Test ("EBT").  Furthermore, two supervisors, one of whom must have participated in SWA's Drug and Alcohol Training Program, must substantiate and concur in the decision to test the employee reasonably suspected of alcohol abuse.  If the EBT result is .02 or higher, the employee must be re-tested.  A one-time EBT result of .042 or more, or two consecutive EBT results of .02 or higher, will result in termination for violation of SWA's Alcohol Misuse Policy.

Plaintiff, who had been on leave recovering from a shoulder injury, returned to work on September 1, 2008.  After talking that

---

[6] First Amended Complaint, #3, Ex. J.

morning to her husband, she states that she drove to work from Spring, Texas to Hobby Airport.  Upon parking her car, she gargled with mouthwash and then continued to the Flight Attendant Lounge. She approached the In-Flight Supervisor, Becky Green, with a note from her doctor regarding her return to work after her shoulder injury.  Green, who had participated in SWA's Drug and Alcohol Training Program four times, claimed that Plaintiff had bloodshot eyes and an odor of alcohol on her breath.  Green requested another supervisor, Caren Eaton, who had taken the Drug and Alcohol Training Program eight times, to observe Plaintiff.  Eaton agreed with Green's determination.  A third supervisor, Katrina Bannon, who had recently taken the training program, concurred with Green's and Eaton's evaluation, and the three pulled Plaintiff from her flight and sent her to be tested.  A fourth employee, who helped to arrange for the EBT, confirmed that she, too, observed signs of alcohol-related impairment in Plaintiff.

The result of Plaintiff's first EBT was 0.162, much higher than .042; a confirmation test taken fifteen minutes later gave a reading of 0.153.  While the tester detected an odor of alcohol on Plaintiff's breath and noted that her eyes were bloodshot, he stated that she did not appear to be drunk and was not disheveled.

On September 4, 2008, a fact-finding meeting was conducted with Kevin Clark ("Clark"), the SWA Houston Inflight Base Manager, Stephanie Tillman, a TWU representative, Katrina Bannon, an

Inflight Services Supervisor, and Plaintiff.   In her complaint Plaintiff alleges that she suggested that her EBT result was positive because she suffered from gastro-esophageal reflux disease ("GERD"), and she offered to provide medical documentation to Clark.[7]   Clark stated that he was not qualified to review medical records and suggested that Plaintiff provide them to the company's Medical Review Officer ("MRO"), but she did not do so.

On September 9, 2008 Clark sent Plaintiff a letter informing her that she was terminated.   On September 10, 2008 Local 556 filed grievance number 42-0052, challenging Plaintiff's termination. Another union representative, Christopher St. Julian, gave Plaintiff a grievance form, which she filled out and returned.   She alleges that St. Julian told her that she would never be able to regain her job and that she should only pursue the grievance

---

[7] In a Declaration dated January 7, 2011 and made under penalty of perjury, #24-2, submitted as an attachment to her opposition to the summary judgment (#24), Plaintiff  stated that she went to her doctor on September 3, 2008 to obtain medical documentation that tied her medical conditions to false EBT readings.  She declares that her doctor "suspected possible causes for the false reading such as, Acid Reflux Disease, hypoglycemia, or high liver enzymes caused by damage to my liver."  #24-2 at ¶ 4. She also indicated that TWU received research information from her the next day.  *Id*.  At the September 4, 2008 fact-finding meeting she states that she also gave Clark and Tillman a written statement outlining her medical conditions, future doctor's appointments, and potential causes for her positive EBT results.  *Id*. at § 5; #24-4 (handwritten by Plaintiff).  She maintains that TWU representatives told her not to communicate with SWA because that was TWU's responsibility. Plaintiff's Dep., #24-7 at 37, ll. 10-15.   She insists no one told her that TWU would not submit the medical information to SWA.

process to try to keep her health benefits.  She claims she tried to contact him during the next month, but neither he nor any other union representative communicated with her.[8]  Plaintiff also alleges that TWU representatives told her not to contact SWA because that was TWU's responsibility.  Plaintiff's grievance was heard by telephone conference on October 8, 2008, during which Christopher St. Julian appeared as Plaintiff's union representative.  It was denied by SWA that same day.  Plaintiff immediately appealed to the Flight Attendant Board of Adjustment, although St. Julian told her it was futile.  She claims that after she called St. Julian numerous times, he finally answered her call on December 9, 2008 and asked about possible medical conditions that might have caused a false positive on her EBT.  She claims that she had previously supplied TWU with research information on such conditions.  St. Julian asked for a letter from her physician explaining her current medical conditions, Ex. F. to the Amended Complaint.  St. Julian stated that he would then submit the physician's letter to the Grievance Committee for review.  Claiming

---

[8] The Court notes that "as a matter of law, the failure to keep a grievant informed of the status of the grievance is not a breach of fair representation."  *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1230 (E.D.N.Y. 1990), *citing Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975), *cert. denied*, 425 U.S. 981 (1976)(failure to keep grievant informed of status of his grievance insufficient to support claim of unfair representation), and *Higdon v. United Steelworkers of America*, 706 F.2d 1561 (11th Cir. 1983)(failure to give grievant opportunity to attend and notice of one segment of grievance process not breach of duty).

that on December 10, 2008 her physician sent the requested letter
to TWU,[9] Plaintiff charges St. Julian also with arbitrarily failing
to provide SWA with such medical documentation, although she did
not then know about his omission.   She also pleads that two days
later she sent more research to St. Julian, but that again he
failed to forward it to SWA.   She further asserts that on December
15, 2008, St. Julian called her and informed her that there would
be a teleconference on her grievance the next day, but that he
failed to provide any necessary information or guidance on what she
should expect.   As a result she was unprepared, surprised, and
confused during the teleconference, and her participation was
abruptly terminated.   On December 22, 2008 the union informed
Plaintiff that the Board review was postponed for sixty days.

On January 9, 2009, after investigating Plaintiff's grievance
and examining the evidence in Southwest's possession, the union
declined to represent Plaintiff further and advised her of her
right to retain her own counsel and proceed to arbitration.   #21,
Ex. 4; also #4, Ex. H.   She retained counsel, waived her right to
appeal to the Flight Attendant Board of Adjustments, and elected to
proceed to arbitration.

---

[9] #24-5.   The letter states simply, "I am primary care
physician for Mrs. Gerhardt and she is currently being treated for
Acid Reflux disease."

On January 23, 2009 Plaintiff executed a release of Local 556. #21 Exs. 3, 4, and 5 and 5A.[10] Local 556 contends that this release relieved it of any duty of representation thereafter.   In relevant part, the release stated,

> I agree and understand that:
>
>> 1.   The grievant's attorney and I release the Transport Workers Union of America Local 556 of its responsibility for the presentation of my Grievance.  My attorney and I agree to hold harmless the Transport Workers Union Local 556, its officers and Board of Directors for any act or omission from this date forward relative to my grievance and the arbitration process, which hears and decides my case. . . .
>>
>> 3.   My attorney and I will be responsible for the preparation and the presentation of my case before the System Board of Adjustment and/or the arbitrator and will hold the Local Union, its officers and Board of Directors harmless and release them from any liability regarding presentation or outcome of my hearing, as well as from any costs and expenses associated with any System Board and/or arbitration hearing.

#21, Exs. 3 and 5A.

Plaintiff and her new attorney, Joseph Y. Ahmad, proceeded to arbitration.   At the arbitration hearing on April 16, 2009 witnesses were called and testified.  Plaintiff in essence argued

---

[10] Because the print on the copy executed by Plaintiff is not legible. Defendants presented an unexecuted but legible copy of the same standard form (Ex. 5 and 5A) with an affidavit from John Parrot, Chair of the Grievance Committee for TWU Local 556, stating that it was the same form used for all flight attendants and was the form signed by Plaintiff and her attorney.  Plaintiff has not contested its accuracy.

that she could not have functioned as she did on September 1, 2008 if she were alcohol impaired and none of the witnesses testified that she seemed intoxicated on that day.  Plaintiff submitted a doctor's note and testified that GERD causes frequent burping and artificially increased mouth alcohol levels that could have caused her to have a false positive on the EBT.  The parties agreed to, and did, submit post-hearing briefs with supporting authority.

In a decision issued on June 17, 2009, the arbitrator, Kathy Fragnoli, found that Plaintiff's EBT results were likely inaccurate, that Plaintiff had an excellent twenty-year work record, and that she should be reinstated in her job. Nevertheless, the arbitrator concluded that because Plaintiff did not submit her medical records to the MRO as requested at the September 4, 2009 fact-finding meeting, Plaintiff would not be awarded back pay.  #21, Ex. 2.[11]

Plaintiff filed suit against Local 556 on October 13, 2009; on November 19, 2009 she filed a First Amended Complaint (#3), adding

---

[11] Specifically, the arbitrator wrote at 12,

In short, Grievant did not bring alternative explanations for her positive EBT results to Southwest's attention until this arbitration.  Therefore, Southwest was never given any real reason to question the results of the EBT until this arbitration.  For these reasons, while this arbitrator is of the opinion that reinstatement is appropriate, back pay is not.

TWU as a defendant.[12]  She claims Defendants breached their duty of fair representation because their failure to provide SWA with Plaintiff's medical documentation was the cause of the arbitrator's denial of back pay and benefits.

**TWU's Motion for Summary Judgment (#20)**

TWU argues that as demonstrated by the summary judgment evidence, Plaintiff has no viable cause of action against it.

First, all her allegations relate to actions by Local 556, not TWU.  She testified in her deposition taken in September 2008 that

---

[12] The First Amended Complaint (#3 at 16) identifies the following "arbitrary, capricious, inexplicable, irrational and wrongful acts" by TWU to support her claim of breach of duty of fair representation:

a.  failing to provide any guidance, assistance, or information to Ms. Gerhardt so she could have submitted her medical records and research information to SWA;
b.  failing to submit Ms. Gerhardt's medical records to the proper SWA personnel;
c.  failing to provide Ms. Gerhardt with substantive and procedural information regarding her grievance;
d.  failing to conduct a proper investigation into Ms. Gerhardt's medical conditions and their relation to false EBT results;
e.  refusing to arbitrate Ms. Gerhardt's grievance;
f. refusing to allow Ms. Gerhardt to actively participate in the grievance process;
g.  refusing to present Captain Renfro's expert opinion to the proper SWA personnel;
h.  violating its own Constitution and Bylaws;
I.  taking a biased stance towards Ms. Gerhardt's medical conditions; and
j.  failing to properly prepare and assist Ms. Gerhardt and her expert witness before an intra-union grievance conference.

TWU was not involved in the processing of her grievance.[13]   TWU had

---

[13] See, e.g.,Plaintiff's Deposition, #20, Ex. 2 at 75-78, regarding her communications with Local 556 from the time Plaintiff was  first called about her grievance by Stephanie Tillman in early September 2008:

    Q.  And Ms. Tillman, do you know who she is?
    A.  I don't know her exact title, no.
    Q.  Is she with Local 556?
    A.  yes.
    Q.  All right.  She's not with the National Union is she? You understood that, right?
    A.  Right.  She's with Local.
    Q.  And then  you dealt with--when you signed the medical release for Christopher St. Julian, you understood that Mr. Julian was with Local 556?
    A.  Correct.
    Q.  And all your communications then were with Mr. Julian and Local 556 at that point?
    A.  Correct.
    Q.  Do you know whether you had any?  Do you remember having any communications with the International Union?
    A.  I don't recall any.
    Q.  And then you had your conference call with the Local 556 Board?  You understood that that was a Local 556 Executive Board; is that correct?
    A.  I did once the call was made. . . .
    Q.  And as far as you know, there were no International Executive  Board  people  or  there  were  no--the International Union was not a part of that meeting?
    A.  Correct. . . .
    Q.  The International Union was not part of that release, were they?
    A.  Not that I'm aware of, no.
    Q.  Were there any communications that you had with the International  Union  during  this  period  of  time  from September 2008 until June of 2009?
    A.  No.
    Q.  And you recognize that the arbitrator made a finding and on page two, in the background information that the collective  bargaining  agreement  involves  Southwest Airlines and Local 556; is that correct?
    A.  Correct.
    Q.  Do you have any specific complaints regarding the International  Union's  handling  of  your  discharge  and subsequent grievance process?

no communication with Plaintiff from her termination in September 2008 to the issuing of the arbitration decision in June 2009. #20, Ex. 2 at 76, ll. 12-15, at 77, ll. 22-25. Because TWU played no part in the grievance process, Plaintiff fails to allege or show that TWU acted in an arbitrary, discriminatory or bad faith manner because there are no facts that would support her claim that it violated its duty of fair representation.

Second, TWU contends that Plaintiff's cause of action against it is time-barred because she first sued TWU in an Amended Complaint filed on November 19, 2009 (#3) more than six months after the arbitration hearing on April 16, 2009. Furthermore TWU also argues that Plaintiff knew that TWU was not involved in the decision making regarding her grievance by at least January 9, 2009 when Local 556 advised her it would not pursue her grievance. Plaintiff's Dep., #20 Ex. 5 at 77, ll. 22-25 (conceding that she had not had any communications with TWU from her termination through the issuance of the arbitrator's decision).

### Local 556's Motion for Summary Judgment (#21)

Plaintiff's only complaint against Local 556 is that it failed to forward to SWA the medical information that Plaintiff claims she provided to Local 556.

---

A.  No.

Local 556 argues that Plaintiff failed to follow the directions of the SWA management official who told her during the September 4, 2008 fact finding meeting to send any medical evidence relating to her grievance that she might have to SWA's MRO. Local 556 also argues that Plaintiff was aware at least as of the arbitration hearing on April 16, 2009 that SWA had not received the documentation.

Local 556 emphasizes that on January 9, 2009 it advised Plaintiff that it would not arbitrate her case. Plaintiff released Local 556 from further representation on January 23, 2009. Plaintiff did not file this suit until November 9, 2009, more than six months after this release[14] and the arbitration hearing.

Local 556 further contends that Plaintiff has failed to present any evidence showing that Local 556 acted in an arbitrary, discriminatory or bad faith manner regarding her grievance. Therefore, as a matter of law, Local 556 cannot be found to have violated the duty of fair representation.

Furthermore Local 556 insists that this action is barred by the six-month statute of limitations applicable to such claims and which commenced at the time Plaintiff knew or should have known of the alleged violation of its duty of fair representation. Again,

---

[14] The Court notes that according to the record, Plaintiff filed her original Complaint against Local 556 only on October 13, 2009 (#1), which was still more than six months after Plaintiff signed the release, but not more than six months after the arbitration hearing on April 16, 2009.

Plaintiff released Local 556 on January 23, 2009, after which Local 556 had no duty to represent her.  Regarding Plaintiff's contention that the union is responsible for her and SWA's lack of information about her medical condition from January 9, 2009 until the arbitration order issued in June 2009, Local 556 argues that it had no duty to represent her fairly after it was released on January 23, 2009.  Moreover Plaintiff had been told much earlier, in September 2008, to send her medical information to SWA's MRO, but she did not do so.[15]  Furthermore she failed to file suit for another eleven months.

Local 556 maintains that according to Plaintiff's own pleadings Plaintiff was aware no later than April 16, 2009, at the arbitration hearing, that SWA had not received the medical documentation that Plaintiff maintains was relevant to her grievance.  First Amended Complaint (#3) at ¶ 35 ("Evidence of her medical conditions was presented to SWA for the first time" at the April 16, 2009 arbitration.).[16]  It again argues that more than six

---

[15] The Court notes that Plaintiff asserts that this request was a only a suggestion and that union representatives also told her not to contact SWA herself, but that it would communicate with SWA on her behalf.  Because in a summary judgment review, the Court draws all reasonable inferences in favor of the non-movant, this disagreement must be resolved in favor of Plaintiff.

[16] See also Plaintiff's Declaration, #24-2 at 4 ("My arbitration was held on April 16, 2009.  I then learned that the evidence of my medical conditions was being presented to SWA for the first time.").

months elapsed after that arbitration hearing before she filed this action.

Plaintiff has asserted that the arbitrator's denial of back pay was due to Local 556's not forwarding her medical information to Southwest.  Plaintiff's Dep. (#20, Ex. 2 at 68).  It responds that at most, it was negligent, and if so, acts of negligence do not equate to arbitrary discriminatory or bad-faith (i.e., intentional) conduct.  Thus her action against Local 556 should be dismissed because it is barred by limitations and because she failed to state a claim upon which relief can be granted.

### Plaintiff's Responses (#24 and 25)

Plaintiff insists that she has stated a claim against TWU because Local 556 is and was subordinate to the TWU International.  TWU's website states that it "coordinates the activities of the Divisions and the Locals and assists in negotiations, organizing drives and legislative campaigns.  It provides professional legal, education, research and public relations services to the Locals and Divisions."   #25, Ex. 1 (556 Bylaws).  Furthermore the International Constitution governs and controls all TWU and TWU Local activities and delegates power to Local Executive Boards, composed of officers elected by the Local's members.  The Boards cannot act without this delegation of authority, nor can their decisions contradict International's policies.  The International also retains the power to revoke a Local's charter or suspend it

for noncompliance with the International's Constitution.  #25, Ex. 2 at 57 (Union Constitution).  The Local writes its own bylaws, but they must conform to the Constitution and policies of the International union and they must be approved by the International Administrative Committee.  She insists that the Local is entirely controlled by the International, including the grievance procedure at issue.  The Local cannot withdraw from the International Union.  The collective bargaining agreement must have the written approval of the International president before it binds any member or any Local.  Thus TWU is a proper party.

Plaintiff characterizes TWU's conduct in failing to submit her medical conditions and research as "arbitrary and illogical."  #24 at 6.  She admits that she first learned at the arbitration hearing on April 16, 2009 that her medical evidence was only then presented to SWA.  As the arbitrator's opinion makes clear, she maintains, TWU's conduct "extinguished her right to further compensation and to be made whole."  Failure to perform a ministerial task, such as forwarding Plaintiff's medical information, where individual interest is strong and will result in extinguishing an employee's claim, may constitute arbitrary conduct establishing a breach of the duty of fair representation.  *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 881 (9th Cir. 2007)(holding that the union's failure to perform ministerial task that substantially injured a union member was sufficient to

constitute a breach of its duty of fair representation). Plaintiff insists this failure is sufficient to raise a genuine issue of material fact as to whether TWU breached its duty of fair representation. Union error is "arbitrary if it reflects a reckless disregard for the rights of the individual employee." Such error is "arbitrary if it reflects a reckless disregard for the rights of the individual employee." *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985).

Plaintiff argues that the claims against Local 556 are not time-barred because they only accrued when Plaintiff discovered that TWU and its representatives never submitted any medical documents to SWA, in other words no earlier than June 17, 2009, when the arbitration opinion was issued and apprised her that she would not receive back pay or lost benefits because TWU never presented the medical documents to SWA. She also contends that the statute of limitations was tolled during her arbitration until the time of the final decision on her grievance. *Beck v. Caterpillar, Inc.*, 855 F. Supp. 260, 263 (C.D. Ill. 1994), *aff'd*, 50 F.3d 405 (7th Cir. 1995)(limitations on a hybrid § 301 claim begins to run from the time of the final decision on the grievance).[17]  Because

---

[17] The Court finds that Plaintiff misrepresents the holding of this case by leaving off the end of the statement, " . . . or from the time a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." The Court concludes that evidence shows, and Plaintiff does not disagree, that Local 556 informed her on January 9, 2009 that it would no longer pursue her grievance. Thus

this lawsuit was filed within six months from June 17, 2009,
Plaintiff maintains that it is timely.  She also argues that the
statute of limitations was tolled during her arbitration.  *Frandsen
v. Brotherhood of Railway, Airline, and Steamship Clerks, Freight
Handlers, Express, and Station Employees*, 782 F.2d 674, 681 (7th
Cir. 1986)(during the pendency of union procedures, the six-month
statute of limitations is tolled and begins running only when union
procedures are exhausted.").[18]

### TWU's Reply (#26)

TWU insists Plaintiff fails to present evidence to defeat its
motion and that she ignores the fact that summary judgment evidence
shows that none of its representatives had any responsibility for,
or was involved in any way, in the representation of Plaintiff or
in processing her grievance.  The general rule is that acts of a
local union and its agents may not be imputed to an international
union and mere affiliation does not establish vicarious parent body
liability.  *Carbon Fuel Co. v. Mine Workers*, 444 U.S. 212 (1979);
*Shimman v. Frank*, 625 F.2d 80 (6th Cir. 1980), *overruled on other
grounds in later appeal sub nom. Shimman v. International Union of
Operating Engineers*, 744 F.2d 1226 (6th Cir. 1984)(en banc), *cert.*

---

the latter condition is met by January 2009.

[18]  Again, the Count finds here that union procedures were
exhausted when Local 556 gave notice in January 2009 that it would
not proceed with her grievance and when she hired an attorney and
signed the release later that month.

-24-

*denied*, 469 U.S. 1215 (1985).   "A local union is not an agent of its International, and an International cannot be held per se responsible for and identified with the conduct of local unions [citations omitted]."   *Walters v. Roadway Express*, 400 F. Supp. 6, 16 (S.D. Miss. 1975)(*citing Barefoot v. Teamsters*, 424 F.2d 1001 (10th Cir.), *cert. denied*, 400 U.S. 950 (1971)), *aff'd in relevant part*, *reversed in other part*, 557 F. 521 (5th Cir. 1977).   That the international union signed a collective bargaining agreement will not alone make it vicariously liable for the acts of a local union; there must be evidence that the international union represented the local employees in the grievance procedure to impose liability on the international union.   *Hammons v. Adams*, 783 F.2d 597, 604–05 (5th Cir. 1986); *Pipes v, United Parcel Service, Inc.*, Civ. A. No. 3:07-CV-1762, 2009 WL 1684689, *5 (W.D. La. June 16, 2009).

### Local 556's Reply (#27)

Plaintiff fails to explain why she failed to comply with SWA's requirement that she provide medical information to SWA's MRO and why the arbitrator found (in a decision not challenged by this suit nor subject to review by this Court) that she was not to be awarded back pay because she failed to supply such information.[19]   Nor does she address the legal effect of her January 2009 release of 556

─────────────

[19] Local 556 denies that she ever furnished any medical information to it, but as this Court noted earlier, it must make all reasonable inferences in favor of Plaintiff's well pleaded factual allegations.

long before her arbitration hearing.  Local 556 argues that she knew or should have known at that point that she and/or her attorney were in charge of her case and responsible for gathering necessary information and submitting it to SWA or to the arbitrator.  Her failure to address the release should estop her from arguing that the union owed her any duty of representation after the release.

### Court's Decision

**TWU**

First, the Court finds that Plaintiff has failed to state sufficient facts to demonstrate a plausible claim for breach of a duty of fair representation against TWU.  She has presented no facts indicating that TWU had anything to do with her termination, her grievance or her arbitration; in fact, in her deposition she testified that it did not.  As she admitted, she had no communications with TWU during the relevant period from her termination through the issuance of the arbitrator's decision denying her back pay and benefits and no knowledge of any role TWU might have played in the proceedings.  TWU was not involved in nor a signatory to the collective bargaining agreement between Local 556 and SWA.  Common law principles of agency apply to determine whether an international union is liable for the actions of a local affiliate.  *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 216-17 (1979); *Pipes v. UPS,* Civ. A. No. 3:07-CV-1762,

2009 WL 1684689, *5 (W.D. La. June 16, 2009).  A principal-agent relationship cannot be inferred merely because the international union is affiliated with a local union.  *Carbon Fuel*, 444 U.S. at 212;  *Mammons v. Adams*, 783 F.2d 597, 604 & n.29 (5th Cir. 1986).  In *Carbon Fuel*, given "Congress' clear statement of the limits of an international union's legal responsibility for the acts of its local unions," the Supreme Court found that there was no evidence that the international union "instigated, supported, ratified or encouraged" any of the local union's actions so as to make the international union liable as a principal might be for its agent's actions.  444 U.S. at 217.  *See also Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120*, 647 F.2d 372, 382 (3d Cir. 1981)(holding that the international union was not liable to the employer because it was not a party to the collective bargaining agreement and its employees could only be liable if they induced the local unions's illegal conduct).  Moreover in *Carbon Fuel* the Supreme Court rejected the argument that the international unions should be held liable for its failure to respond to the actions of its local union because "such a rule would pierce the shield that Congress took such care to construct."  *Carbon Fuel*, 444 U.S. at 217.  *See also Scott v. Graphic Communications Int'l Union, Local 97-B*, 92 Fed. Appx. 896, 905-06 (3d Cir. 2004)(finding in a summary judgment review that the international union had no duty to intervene even when it knew of the local union's illegal

-27-

conduct because it did not authorize and ratify that conduct); *Phelan v. United Ass'n of Journeyman of Plumbing Indus. Local 305*, 973 F.2d 1050, 1061 (2d Cir. 1992)("An international union has no independent duty to intervene in the affairs of its local chapters even where the international has knowledge of the local's unlawful acts."); *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1289 (3d Cir. 1991)("Although the International may have been intentionally or negligently guilty of tunnel vision, we agree with the district court's holding that the evidence produced by the plaintiffs does not show that the International encouraged, authorized or ratified the actions of th Local in discriminatorily failing to refer plaintiffs to work.").

Even if Plaintiff had stated a claim with facts showing that she had a plausible claim against TWU either directly based on its own conduct or because it instigated, authorized, supported, ratified or encouraged its alleged breach of duty of fair representation, the Court agrees with TWU that Plaintiff's claims against TWU are time-barred.  The six-month statute of limitations begins to run when a potential plaintiff knew or reasonably should have known that a breach of her union's duty of fair representation occurred.  The Court finds that the date of Plaintiff's arbitration hearing on April 16, 2009 is when her claim clearly accrued,[20] as

---

[20] There is no evidence that she knew or reasonably should have known of the alleged failure of Local 556 to forward the medical information to SWA at the time it informed her it would no longer

her judicial admissions in her complaint and her declaration states that she learned at that proceeding that Local 556 had never forwarded the medical documentation and research that she claimed she had provided to it. "Factual assertions in the complaint are 'judicial admissions conclusively binding' on the plaintiff." *Ikossi-Anastasiou v. Board of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 550 (5th Cir. 2009)(*citing Morales v. Dept. of Army*, 947 F.2d 766, 769 (5th Cir. 1991)), *cert. denied*,130 S. Ct. 1285 (2010). As explained by the Fifth Circuit in *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001),

> A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them.'"). Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention. . . . "A judicial admission is conclusive unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast may be controverted or explained by the party." [citations omitted]

Federal Rule of Civil Procedure 56(c) expressly states that admissions on file in the record can serve as the basis for granting summary judgment. Since "judicial admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record." *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001), *citing Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548-49 (5th

---

pursue her grievance or when she signed the release.

Cir. 1985).  Moreover Plaintiff did not ask the Court to allow her to withdraw her admission.  Because she failed to file suit against TWU until November 19, 2009, more than six months after the arbitration hearing, the statute of limitations bars her claim.

**Local 556**

Although counsel for Local 556 argues that she did not file suit against Local 556 until November 9, 2009, the record reflects that this suit was filed against Local 556 on October 13, 2009, less than six months after the arbitration hearing,[21] so the Court finds that it was timely.

Nevertheless the Court concludes that summary judgment in favor of Local 556 is appropriate for two reasons.

First, the release signed by Plaintiff on January 23, 2009 is clear and unambiguous and expressly states that she and her attorney "will hold the Local Union, its officers and Board of Directors harmless and release them from any liability regarding presentation or outcome of my [arbitration] hearing, as well as

_____

[21] While it could be argued that at some point before her arbitration hearing she and her attorney should have reasonably discovered that medical documents had not been sent to SWA, Defendants have not submitted any evidence establishing that Plaintiff knew or reasonably should have known that the materials had not been forwarded.  *F.T.C. v. National Business Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004)("A statute of limitations is an affirmative defense.  *See* Fed. R. Civ. P. 8(c).  An affirmative defense places the burden of proof on the party pleading it."), *cert. denied sub nom. Namer v. F.T.C.*, 544 U.S. 904 (2005).  Using the date of the arbitration hearing as the date she knew, as evidenced by her judicial admissions, does not raise a fact issue.

from any costs and expenses associated with any System Board and/or arbitration hearing."  In her response Plaintiff never addresses the release or its effect (see pages 13-14 of this Opinion and Order).

Second, Plaintiff has failed to present any evidence that Local 556's conduct in handling her grievance was arbitrary (irrational, without a rational basis or explanation),[22] discriminatory (similarly situated flight attendants who had positive EBT results were treated differently) or in bad faith (fraudulent, deceitful or dishonest).  The fact that a union does not pursue arbitration is insufficient as a matter of law to constitute a breach of its duty of fair representation. *Vaca*, 386 U.S. at 192; *Pipes v. UPS,* Civ. A. No. 3:07-CV-1762, 2009 WL 1684689, *5 (W.D. La. June 16, 2009).   Its obligation is to "process a grievance 'with reasonable diligence unless it is decided in good faith that the grievance lacked merit or for some other reason should not be pursued.'"  *Pipes* at *5, *quoting Landry*, 880 F.2d at 852, in turn *quoting Mammons v. Adams*, 783 F.2d 597, 602 (5th Cir. 1986).   Mere negligence or a mistake judgment is insufficient to constitute a breach of the unions's duty; instead Plaintiff must prove that Local 556's actions were arbitrary, discriminatory or in bad faith.  *Id., citing Vaca*, 386 U.S. at 190.

---

[22] *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. at 46.

Conclusory allegations are insufficient to meet her burden of proof.

Plaintiff has not shown that Local 556 arbitrarily or irrationally failed to investigate her grievance. The union's decision not to purse her grievance does not rise to the level of the irrational in view of Plaintiff's objective, positive EBT results. Nor has Plaintiff shown that she was discriminated against because similarly situated flight attendants who had positive EBT results were treated differently. Nor is there any evidence that the union acted in  bad faith, i.e., fraudulently, deceitfully or dishonestly.  The only evidence she has that she faxed the medical information to the union is her own self-serving testimony.  In the materials attached to her opposition that she argues were those faxed to the union, there is a notation in her own handwriting stating "research faxed to Union 12/3" (#24-4) and "research faxed 12/12" (#24-6); she does not submit the fax machine's standard return confirmation sheet.  Even more to the point, medical documents that she submitted (#24-4, 24-5, and 24-6,) do not demonstrate that her doctor found that her medical conditions could have caused the bloodshot eyes, alcohol on her breath, or positive results on her EBTs.  The only document that is clearly from her doctor on the Doctor's office billing stationary (#24-5) simply states, "I am the primary care physician for Mrs. Gerhardt and she is currently being treated for Acid Reflux

-32-

disease.[23]  If you should have any questions, please feel free to contact my office."  The "research" that she submitted came from Wickipedia, magazines, newspapers, etc., or its source is unidentified; it is not established as reliable by any expert or, more importantly, linked to Plaintiff's alleged individual ills, none of which has been supported by evidence except acid reflux disease.  There is no indication from her doctor that acid reflux disease might have caused her positive EBT results.

In sum Plaintiff has failed to produce evidence that her release did not release Local 556 from liability for breaching its duty of fair representation or that Local 556's conduct towards her was arbitrary, discriminatory or in bad faith.

Accordingly, for the reasons indicated above, the Court

ORDERS that TWU's motion for summary judgment (#20) and Local 556's motion for summary judgment (#21) are GRANTED.

**SIGNED** at Houston, Texas, this 14th day of February, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

_____

[23] A comparison of the document with Dr. Schrader's office letterhead and signature (#24-5) with #24-4, a plain sheet with handwriting listing her ailments and their effects, as well as other writing in her exhibits, shows that Plaintiff, herself, wrote the list of her ailments and their possible effects.